In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2734

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY RUTLEDGE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 09 CR-49-LJM-KPF-1—**Larry J. McKinney**, *Judge.*

ARGUED JANUARY 14, 2011— DECIDED AUGUST 8, 2011

Before BAUER, WOOD, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* At the jury selection preceding Anthony Rutledge's criminal trial, the prosecutor used peremptory challenges to strike the only two African-American members in the *venire*. Suspecting that these actions violated the Equal Protection Clause, Rutledge's attorney objected to the strikes using the three-step procedure established in *Batson v. Kentucky*, 476 U.S. 79 (1986).

This appeal focuses solely on *Batson*'s third step, which requires the district court to make a finding of fact re-

garding the prosecutor's credibility after the prosecutor has offered a race-neutral reason for the strike (step two). Here, the district court denied Rutledge's *Batson* challenge after saying that the government's reasons were "nonracial," but without making any finding on the prosecutor's credibility. As we have recently emphasized, "we cannot presume that the prosecutor's race-neutral justification was credible simply because the district judge ultimately denied the challenge." *United States v. McMath*, 559 F.3d 657, 666 (7th Cir. 2009). The district court must make an independent credibility determination at step three. Because we cannot find the necessary credibility finding in this record, we are unable at this stage to make an informed decision about the court's decision to deny the *Batson* challenge. We therefore remand the case to the district court so that it can fill this void.

# I

During the *voir dire* before Rutledge's trial, the judge conducted a number of individual interviews of the venirepersons. As we have noted, the group included two African-American members, Mr. Powell and Ms. Martin. When asked whether he had any questions relating to his possible service on the jury, Powell responded as follows:

> The only thing that I can think of is that only being the other African American in this courtroom, would my views be overruled, seeing that they will

think I'm taking his [the defendant's] point on some-
thing?

The district judge replied that "there's no room for
taking race into account at all," and Powell immediately
said, in response to the court's direct question, that
he could be a fair and impartial juror. The *voir dire*
record reveals even less with respect to Martin. She was
a business insurance processor; she handled endorse-
ments for auto insurance; and she enjoyed her work.
She had no questions for the court, and she affirmed
that there was no reason why she could not be a fair
and impartial juror. At the conclusion of the interviews,
however, the government struck Powell and Martin,
which prompted defense counsel's *Batson* challenge.
In response, this exchange followed:

> [THE PROSECUTOR]: First, I would state myself
> that I am African American, for the record; and my
> basis for striking Mr. Powell is his statement
> indicating that because he is an African American
> male, if he was to side with the defendant, if other
> jurors would listen to him.

> I believe that this statement demonstrates a level
> of going against his credibility and also his bias
> toward the defendant without hearing any evidence
> at this point.

> THE COURT: What about [Ms. Martin]?

> [THE PROSECUTOR]: Your Honor, for [Ms. Martin],
> during the voir dire, [Ms. Martin] appeared agitated
> and also frustrated during voir dire.

THE COURT: Anything else you would like to say?

[DEFENSE COUNSEL]: Judge, I guess those are racially neutral reasons. I didn't see any hesitation or agitation on the part of Ms. Martin. So it's not a credible racially neutral reason.

With respect to Mr. Powell's rationale, he simply raised a legitimate personal question which didn't in any way reflect that he couldn't be a fair juror. It was just a concern that he had. So that's not a legitimate racially neutral reason for striking him.

THE COURT: I heard Mr. Powell say he was worried about the respect he was going to get as a juror. Is that a fair statement?

[DEFENSE COUNSEL]: I think so.

THE COURT: Is that what troubled you?

[THE PROSECUTOR]: What troubled me is he was afraid the jurors would not listen to him if he were to side for the defendant because they wouldn't find him credible because he is an African American male.

THE COURT: I think—I'm having a little trouble with that. I think he's given us his real thought about respect that he might get from other jurors, and I indicated to him that he is entitled to the respect of other jurors I think without equivocation. Then I think he said he was all right with it.

I guess your concern is—his concern was racial, right?

[THE PROSECUTOR]: That's my understanding, Your Honor.

THE COURT: So your concern is racial?

[THE PROSECUTOR]: No, Your Honor. My concern is whether or not this individual can be unbiased in hearing both sides of the evidence before rendering a judgment.

THE COURT: I think that does it then. Those are both nonracial-related reasons. So I'm going to excuse Mr. Powell.

The court did not say why it was also sustaining the objection with respect to Martin. Once the challenges were denied, the case moved to trial, where Rutledge was convicted. This appeal followed.

## II

The exclusion of even a single prospective juror on account of race, ethnicity, or gender violates the Equal Protection Clause. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008); *Coulter v. McCann*, 484 F.3d 459, 464 (7th Cir. 2007). To prove a violation under *Batson*, "once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful discrimination." *Purkett v. Elem*, 514 U.S. 765, 767 (1995) (*per curiam*).

At the third step, the "critical question" is the "persuasiveness of the prosecutor's justification for his per-

emptory strike," which "comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Miller-El v. Cockrell*, 537 U.S. 322, 338-39 (2003) *("Miller-El I"*); see also *Snyder*, 552 U.S. at 477. Credibility determinations can be made in many ways, and for that reason we treat the district court's findings at step three as findings of fact, reviewable only for clear error. See *Miller-El I*, 537 U.S. at 339 ("Deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court to make credibility determinations."); *United States v. Taylor*, 509 F.3d 839, 845 (7th Cir. 2007). That deference is heightened when a litigant's race-neutral reason for striking a prospective juror involves the juror's demeanor; there is no way for an appellate court to review this sort of intangible, which appears nowhere on our "cold" transcript. *Snyder*, 552 U.S. at 477, 479; *cf. Klockner, Inc. v. Federal Wire Mill Corp.*, 663 F.2d 1370, 1375 (7th Cir. 1981).

Nevertheless, if there is nothing in the record reflecting the trial court's decision, then there is nothing to which we can defer. See *Snyder,* 552 U.S. at 479; *Taylor*, 509 F.3d at 845. That is why the third step under *Batson* "*requires the court to weigh the evidence and determine whether the prosecution's nondiscriminatory reason for the strike is credible or if the defense has shown purposeful discrimination.*" *McCann*, 484 F.3d at 465 (emphasis added); see also *Miller-El v. Dretke*, 545 U.S. 231, 251-52 (2005) ("*Miller-El II*") ("*Batson* . . . requires the judge to assess the plausibility of [the prosecution's race-neutral] reason in light of all evidence with a bearing on it.").

Where the proffered race-neutral reason for a strike is limited to the juror's demeanor, "the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder*, 552 U.S. at 477.

The analytical structure established by *Batson* cannot operate properly if the second and third steps are conflated. *Purkett*, 514 U.S. at 768. At the second step, nearly any race-neutral reason will suffice, even those that are arbitrary, irrational, or silly. See *id.*; *McCann*, 484 F.3d at 465. It is "not until the *third* step that the persuasiveness of the justification becomes relevant," and "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett*, 514 U.S. at 768; see also *Coulter v. Gilmore*, 155 F.3d 912, 920 (7th Cir. 1998); *cf. Johnson v. California*, 545 U.S. 162, 171 (2005) (explaining that the first two steps govern only the production of evidence later evaluated at step three).

With these basics in mind, the parties have focused primarily on the Supreme Court's decision in *Snyder* and our later decision in *McMath*. In *Snyder*, the Court considered a *Batson* challenge that had been denied after the prosecutor gave two reasons for the strike of a prospective juror. 552 U.S. at 478. The first was his "nervous" demeanor, and the second was his student teaching obligations. The trial court denied the motion, but did not say why. *Id.* at 479. Because the second

reason was suspicious, likely pretextual, and gave rise to an inference of discrimination in light of the circumstances presented, the Court was left with only the demeanor-based reason as a lawful justification for striking the juror. *Id.* at 482-84. The trial judge never made a determination on either the juror's demeanor or the prosecutor's credibility before denying the *Batson* challenge. Under those circumstances, the Court refused to presume that the trial judge credited the demeanor-based justification. *Id.* at 479. Given the fact that over a decade had passed, which made a remand effectively impossible, the Court reversed. *Id.* at 485-86.

In *McMath*, we reviewed a *Batson* challenge to a prosecutor's strike supported only by the prospective juror's demeanor. As in *Snyder*, the trial court made no credibility determination with respect to this explanation. In the face of this silence and the principle expressed in *Snyder*, we refused to "presume that the prosecutor's race-neutral justification was credible simply because the district judge ultimately denied the challenge." *McMath*, 559 F.3d at 666. As *McMath* recognized, under *Snyder* "a summary denial does not allow us to assume that the prosecution's reason was credible; rather the district court's silence leaves a void in the record that does not allow us to affirm the denial." *Id.*; see also *Taylor*, 509 F.3d at 845. In *Taylor,* the basis for the peremptory challenge was not demeanor, but the explanation was inadequate: just as here, the district court failed to mention one juror even though it rejected a *Batson* challenge to the strikes of two jurors. *Id.* Because we "must find out what the district court per-

ceived before we can" resolve a *Batson* denial on appeal, we remanded the case for further findings. *Id.* In other words, when we confront an evidentiary gap at step three, the ultimate *Batson* issue cannot be resolved without a remand. See *McMath*, 559 F.3d at 666; *Taylor*, 509 F.3d at 845; *cf. Coombs v. Diuglielmo*, 616 F.3d 255, 262-64 (3d Cir. 2010) (applying a similar rule).

Here too we conclude that a remand is necessary for the district court to make explicit credibility findings for both jurors. For Martin, this outcome is required by *McMath* and *Taylor*. The prosecutor's race-neutral reason was that Martin "appeared agitated and also frustrated" throughout *voir dire.* Defense counsel responded appropriately by conceding that the demeanor-based reason was facially race-neutral, see *McMath*, 559 F.3d at 665; *United States v. Hunter*, 86 F.3d 679, 683 (7th Cir. 1996), while asserting that it was pretextual. Disturbingly, in the colloquy that followed the district court never once credited the demeanor-based reason for the prosecutor's peremptory strike. The court merely repeated that the demeanor-based justification was a "nonracial-related reason." But everyone already knew that this was true, as a facial matter; the court never resolved the key questions. The trial court "must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder*, 552 U.S. at 477. These findings must be explicit; without them there is a void that stymies appellate review, gives us no finding of fact

to which we might defer, and ultimately precludes us from affirming the denial of the *Batson* challenge. *McMath*, 559 F.3d at 665-66; *Taylor*, 509 F.3d at 845.

Even without these problems, to credit this exchange as an adequate finding at step three would be wrong because it would conflate the second and third steps of the *Batson* analysis: asking whether something is race-neutral is analytically distinct from determining whether the asserted reason is believable or pretextual. See *Purkett*, 514 U.S. at 768; *Johnson*, 545 U.S. at 171; *McCann*, 484 F.3d at 465. All sorts of reasons would pass the step two filter, including such trivial race-neutral criteria as hair length, facial hair, tattoos, or piercings. See *McCann*, 484 F.3d at 465 (citing *Miller El-II*, 545 U.S. at 267 (Breyer, J., concurring), and *Purkett*, 514 U.S. at 768). Perhaps recognizing this, the government has strained to find something in the record that would serve as the necessary step three finding. But all it can say is that the district court "made a factual determination that the government's justification was race-neutral." As we have already explained, this is not enough. At the end of the day, the government's argument is really that the denial of a *Batson* challenge may serve as an implicit finding that the prosecutor's explanation was credible. We rejected that argument in *McMath*, 559 F.3d at 666, and do so again here.

This rule applies with equal force to the strike of Powell. Though the prosecutor's reason for striking Powell was not his demeanor, there were still significant unanswered credibility questions. Much of the conver-

sation between the prosecutor and the judge about Powell focused on figuring out precisely what the race-neutral reason for the strike was. The court's first statement indicated only that it understood that the prosecutor's purported reason for striking Powell was race-neutral. Once again, step three requires more. After Powell voiced his concern that *he* might be stereotyped on the basis of his race, the court assured him that it would make it clear that nothing like that would be tolerated. Powell then answered "no" to the question "[i]s there any reason why you couldn't be a fair and impartial juror . . . ." The court must have credited this statement, or it would have been required to excuse Powell for cause. Before permitting the prosecution to use a peremptory strike on Powell, however, it was still essential to make a finding on the third part of the *Batson* inquiry. As we have said, the court's statement that the prosecutor's reason for striking Mr. Powell was "nonracially-related" did not do the job.

### III

We must also address a potentially worrisome element in the resolution of the Powell strike that we have not yet mentioned. In an effort to convince the judge that her race-neutral explanations were credible, the prosecutor stated for the record that she is African-American. The government later explained this statement in its brief by asserting that the fact that the stricken juror and the prosecutor were of the same race was a factor the judge could consider in making the

credibility finding at step three of *Batson*. Because the exchange between the prosecutor and the judge was so brief here, we do not know exactly why the prosecutor referred to her race, or what she intended the judge to draw from that fact.

At step three, a judge may, and often must, engage in a holistic evaluation of a prosecutor's credibility and motives. The abbreviated exchange on the record is troubling, though, because it can be read as a request by the government for the judge to assume that simply because the prosecutor is herself African-American, she would not engage in prohibited discrimination. The Supreme Court has rejected any "conclusive presumption" that a member of a group will not discriminate against other members of a group. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (reversing summary judgment based on presumption that members of the same gender cannot discriminate against each other); *Castaneda v. Partida*, 430 U.S. 482, 499 (1977) (refusing to "presume as a matter of law that human beings of one definable group will not discriminate against other members of their group"); see also *Powers v. Ohio*, 499 U.S. 400, 402 (1990) (holding that the challenger of a peremptory challenge under *Batson* may proceed "whether or not the defendant and the excluded juror share the same race"). *Batson* itself embodied the rejection of racial stereotypes. 476 U.S. at 89 ("[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the

State's case against a black defendant."). Reliance on the prosecutor's race would also invite giving credence to assumptions about race and discrimination that were shown long ago to be false. See *Castaneda*, 430 U.S. at 503 (Marshall, J., concurring) (summarizing social science research concluding that membership in a minority group is not indicative of a person's attitude towards that group).

While a judge may consider a variety of factors in making a credibility determination, it would be wrong for a judge to assume that a prosecutor of the same race as a juror would not engage in discrimination against that juror simply because of their shared race. As the Supreme Court explained in *Powers*, the Equal Protection Clause "mandate[s] that race discrimination be eliminated from all official acts and proceedings of the State," which is "most compelling in the judicial system." 499 U.S. at 415. To make the finding of fact about the prosecutor's credibility required at step three of *Batson*, the district judge must make an individualized credibility determination based on the actual evidence of the prosecutor's demeanor and actions in the courtroom, as well as any other information properly before the court; the judge may not rely on stereotypical assumptions based on race.

Finally, the government argues that *Thaler v. Haynes*, 130 S. Ct. 1171 (2010) (*per curiam*), abrogated *Snyder* and, accordingly, our decision in *McMath* is no longer good law. In our opinion, this misreads *Thaler*. *Thaler* was a *habeas corpus* case challenging a state conviction.

The question before the Court was whether clearly established Supreme Court precedents required a state judge ruling on a *Batson* challenge to "reject a demeanor-based explanation for the challenge unless the judge personally observed and recalls the aspect of the prospective juror's demeanor on which the explanation is based." *Id.* at 1172. The answer to that question is no. But the Court itself recognized in its opinion that *Snyder* was distinguishable. See *id.* at 1174-75. The question in *Thaler* plays no part in our case, nor for that matter are we, in this direct federal criminal appeal, restricted by the standards of review appropriate in *habeas corpus* proceedings.

## IV

The scope of the remand we are ordering is narrow. The district court must make findings on the issues we have identified. If the passage of time precludes the district court from making such findings, or if it finds that the prosecutor's reasons are not credible, it must vacate Rutledge's conviction. See *Snyder*, 552 U.S. at 485-86. The case is REMANDED to the district court for further proceedings consistent with this opinion.