JAMES L. DENNIS, Circuit Judge,
dissenting:
Defendant-appellant Eugene Thompson, an American of African descent, was convicted of crack and cocaine trafficking, conspiring to do the same, and several illegal firearms possession offenses. During the jury selection process that preceded his trial, the government used five of its seven peremptory strikes against black prospective jurors (numbers 4, 23, 25, 26, and 37), thus eliminating them from serving on Thompson’s jury of twelve, which otherwise would have been about evenly divided between black and white jurors and instead, because of the government’s strikes, consisted of two black jurors and ten white ones.[1] Thompson contended that the government was targeting African-Americans to strike on the basis of their race, thus violating the constitutional right to equal protection of the law. The district court disagreed, finding that the government’s peremptory strikes were not made on the basis of race but rather for legitimate, nondiseriminatory reasons. At issue in this appeal is whether the district court properly applied the framework for ruling on such objections required by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny. I agree with the majority that the district court did not clearly err with respect to prospective jurors 4, 25, 26 and 37. As for Thompson’s objection to the government striking prospective juror 23, however, the record does not contain the requisite determinations for affirmance. Accordingly, I respectfully dissent.
Í.
During the jury selection process that preceded Thompson’s criminal trial, the court instructed the jury to, one-by-one, stand up, state their name, their educational background, occupation, place of residence, and other aspects of their background. Prospective juror 23, who, like Thompson, was black, answered as follows:
THE JUROR: ... My level of education, some college. I worked as an offshore employee for 28 years. I live in the parish of Lafourche.
THE COURT: Married?
THE JUROR: Single. 15 years.
THE COURT: You’re a church organist; is that right?
THE JUROR: That’s correct.
THE COURT: Thank you.
That appears to have been the only interaction between prospective juror 23 and the court or any attorney in the case before the government exercised a peremptory strike to remove him, to which Thompson objected under Batson.
*304 II.
A.
Under Batson, if a criminal defendant intends to object to a peremptory strike as discriminatory, the defendant must first make a prima facie case “by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.” Johnson v. California, 545 U.S. 162, 168, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005) (citing Batson, 476 U.S. at 93-94, 106 S.Ct. 1712). This requirement of a prima facie case is intended to be “simple and without frills.” Price v. Cain, 560 F.3d 284, 287 (5th Cir.2009). It “is not meant to be onerous.” Sorto v. Herbert, 497 F.3d 163, 170 (2d Cir.2007); accord Williams v. Beard, 637 F.3d 195, 214 (3d Cir.2011); see also United States v. McMath, 559 F.3d 657, 664 (7th Cir.2009) (“The test is not rigorous: suspicion even less than ‘more likely than not’ suffices.”); United States v. Stavroulakis, 952 F.2d 686, 696 (2d Cir.1992) (stating that a “smoking gun” is not required). Defendants may present a pri-ma facie case through a range of evidentia-ry mosaics. See Johnson, 545 U.S. at 169, 125 S.Ct. 2410.
Here, to support his prima facie case, Thompson showed that he was himself black and that the government had used five of its seven peremptory strikes against black prospective jurors. The district court did not decide that a prima facie case had been made, but rather reserved judgment and proceeded directly to Bat-son’s second step, requiring the government to offer a legitimate explanation for the strike. I agree with the majority that, because the government then offered such a legitimate explanation, the question of whether Thompson made an initial prima facie case is moot and has dropped out of the picture. See Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (“Once the prosecutor ■has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, -the preliminary issue of whéther the defendant had made a prima facie showing becomes moot.”); United States v. Forbes, 816 F.2d 1006, 1010 (5th Cir.1987) (“[AJppellate review should not become bogged down on the question of whether the defendant made a prima facie showing in cases where the district court has required an explanation.”). Accordingly, I proceed to the second step.
B.
The second step of Batson requires the government to “come forward with a neutral explanation for challenging” the prospective juror at issue. 476 U.S. at 97, 106 S.Ct. 1712. “A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor’s explanation.” Hernandez, 500 U.S. at 360, 111 S.Ct. 1859. The explanation, so long as it is race neutral on its face, need not be “persuasive, or even plausible.” Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). “[N]early any race-neutral reason will suffice, even those that are arbitrary, irrational, or silly.” United States v. Rutledge, 648 F.3d 555, 559 (7th Cir.2011).
Here, the transcript shows the following transpiring in the district court:
THE COURT: ... Let’s go to Juror No. 23.
[THE GOVERNMENT]: My notes reflect that he sat there, looking disinterested and annoyed. He was stern when he was awake. His arms were folded.
Although the government offered no explanation beyond a few words describing how *305 the prospective juror looked, that explanation satisfied the government’s burden on the second step. See Moore v. Keller Indus., Inc., 948 F.2d 199, 202 (5th Cir.1991) (“We also have found ‘disinterested demeanor’ and ‘inattentiveness’ to be valid, race-neutral reasons for peremptory strikes.”). Accordingly, I proceed to the third step, where my concern lies.
C.
On the third step, the district court “[has] the duty to determine if the defendant has established purposeful discrimination.” Batson, 476 U.S. at 98, 106 S.Ct. 1712. Although “nearly any race-neutral reason will suffice” at the second step, on the third step, “the persuasiveness of the justification becomes relevant, and implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.” Rutledge, 648 F.3d at 559 (internal quotation marks omitted). To determine whether the peremptory strike was discriminatory, Batson “requires the judge to assess the plausibility of [the government’s explanation for making the strike] in light of all evidence with a bearing on it.” Miller-El v. Dretke, 545 U.S. 231, 251-52, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (emphasis added); see also Snyder v. Lousiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (stating that “all of the circumstances that bear upon the issue of racial animosity must be consulted”) (emphasis added); Batson, 476 U.S. at 93, 106 S.Ct. 1712 (stating that the district court must “undertake a sensitive inquiry into such circumstantial and direct evidence of intent as may be available ”) (emphasis added). Because Batson imposes on the district court the affirmative duty of determining whether there has been discrimination, at the third step, “[i]t is inappropriate for a district court to perfunctorily accept a race-neutral explanation without engaging in further investigation.” United States v. Jackson, 347 F.3d 598, 605 (6th Cir.2003); see also Jordan v. Lefevre, 206 F.3d 196, 200-01 (2d Cir.2000) (holding that the trial court erred by “engag[ing] in a perfunctory exercise designed to speed the proceedings along” without “comply[ing] with the letter, much less the spirit, of Batson ” and stating that the court disapproves of “a trial court conducting its review of a Bat-son challenge with undue haste and ruling in a summary fashion”); cf. Thomas v. Moore, 866 F.2d 803, 805 (5th Cir.1989) (requiring Batson challenges to be made in a timely fashion because “the corresponding opportunity to evaluate the circumstances of the jury selection process [is] éssential to [resolving the challenge]”).[2] *306 After weighing all the relevant circumstances, the court should then “issue a specific ruling on each juror in question supported by its findings of fact and its rationale for the ruling.” See United States v. Joe, 928 F.2d 99, 103 (4th Cir.1991).
Once the district court has satisfied its duty of determining whether the strike was discriminatory, the district court’s determination is a finding of fact that, like all findings of fact, is subject to highly deferential review on appeal. United States v. Bentley-Smith, 2 F.3d 1368, 1372 (5th Cir.1993). We do not overturn such findings unless our study of the record leaves us “with the definite and firm conviction that a mistake has been committed.” Id. at 1377. Although such review is greatly deferential, affirmance is not automatic. See Riley v. Taylor, 277 F.3d 261, 278 (3d Cir.2001) (stating that, although Batson-related credibility findings receive great deference, “this does not signify that [appellate] review is a nullity”) (quoting Caldwell v. Moloney, 159 F.3d 639, 651 (1st Cir.1998)). This court must determine whether the district court’s finding that the strike was not discriminatory was a rational one in light of all the evidence before the court. See, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (“[T]he ‘clearly erroneous’ standard [of appellate review of fact-finding] requires the appellate court to uphold any district court determination that falls within a broad range of permissible conclusions.”); Bertucci Contracting Corp. v. M/V ANTWERPEN, 465 F.3d 254, 258-59 (5th Cir.2006) (“If the district court’s finding is plausible in light of the record viewed as a whole, the court of appeals cannot reverse.... The court owes even greater deference to findings based on the credibility of witnesses and must uphold them if based on coherent, internally consistent, and facially plausible testimony that is not contradicted by external evidence.”) (footnotes omitted).
Here, the transcript shows that, immediately after the government offered its explanation for striking prospective juror 23, the district court carried out the Batson third-step proceedings as follows:
[THE GOVERNMENT]: My notes reflect that he sat there, looking disinterested and annoyed. He was stern when he was awake. His arms were folded. THE COURT: Any response?
[THE DEFENSE]: I did not observe these characteristics of No. 23. He did seem an honest, intelligent man, who has currently served as an organist at his church.
THE COURT: I find the government’s explanation credible with respect to 23, and I deny the challenge with respect to the peremptory challenge as to 23. They’ve provided me with a race-neutral explanation for striking the juror. Let’s go to Juror No. 25 [the next stricken prospective juror subject to a Batson challenge].
In my view, the above record statements contained in the transcript are insufficient for affirmance on appeal for the reasons that follow.
As the Supreme Court has explained, when the government justifies a peremptory strike on the basis of “a juror’s demean- or (e.g., nervousness, inattention),” assuming that the stricken juror is still in the courthouse, the trial court’s duty to consider all relevant evidence means that the court “must evaluate not only whether the *307 prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” Snyder, 552 U.S. at 477, 128 S.Ct. 1203 (emphasis added).[3] Thus, in cases like this one, when the government’s strike was justified on the basis of the prospective juror’s purported “disinterested,” “annoyed,” and “stern” demeanor, and the venire had not yet been dismissed, meaning that the prospective juror was still in the control of the court, the district court must make at least two determinations: one, that the -prosecutor’s demeanor does not belie a discriminatory intent (that is, that the prosecutor appeared sincere in his explanation) and, two, that the stricken juror’s demeanor can credibly be said to have exhibited the characteristic that the prosecutor attributed to it. See also McCurdy v. Montgomery Cnty., 240 F.3d 512, 521 (6th Cir.2001) (“The need for an explicit, on-the-record analysis of each of the elements of a Batson challenge is especially important when the purported race-neutral justification is predicated on subjective explanations like body language or demeanor.”); United States v. Diaz, 26 F.3d 1533, 1543 (11th Cir.1994).[4] The question then is whether the district court actually made both determinations. Unless the record reveals both determinations, we cannot say on appeal whether the district court satisfied its duty of making a determination of race discrimination vel non on the basis of “all of the circumstances that bear upon the issue.” Snyder, 552 U.S. at 478, 128 S.Ct. 1203; Miller-El, 545 U.S. at 251-52, 125 S.Ct. 2317; Batson, 476 U.S. at 93, 106 S.Ct. 1712.
These determinations must be apparent on the face of the record and they may not be presumed. In United States v. McNath, the Seventh Circuit addressed circumstances in which the district court, after hearing the government explain that it struck a prospective juror because “[h]e looked angry and not happy to be here,” stated without explanation that, “The Bat-son challenge is denied.” 559 F.3d at 661. The. Seventh Circuit declined to affirm, explaining, “The district court did not indicate whether it agreed that [the stricken juror] had an unhappy expression on his face, did not indicate whether this expression was unique to [him] or common to other jurors, and made no evaluation of the prosecutor’s credibility.” Id. at 666. Accordingly, because the district court did not make the requisite Snyder determinations on the record — that the prosecutor’s demeanor did not belie a discriminatory intent and that the juror’s demeanor could credibly be said to have exhibited the characteristic attributed to it — the circuit could not affirm. Id. (“Snyder makes clear that a summary denial does not allow us to assume that the prosecution’s reason was credible; rather, the district court’s silence leaves a void in the record that does not allow us to affirm the denial.”). The circuit remanded to the district court, in *308 structing it to either make the requisite factual determinations, or, “if the passage of time precludes the district court from [doing so], it must vacate the judgment of conviction.” Id. In United States v. Rutledge, the Seventh Circuit reaffirmed this analysis. See 648 F.3d at 560. “[W]hen we confront an evidentiary gap at step three, the ultimate Batson issue cannot be resolved without a remand.” Id.
Although this case differs from McMath and Rutledge in that, in those cases, the circuit was faced with summary denials of Batson challenges on a record devoid of any credibility determination by the trial judge, and we, on' the other hand, have a record showing that the trial judge made the first but not the second credibility determination required by Snyder, we likewise “confront an evidentiary gap” that precludes affirmance. The prosecutor stated that he struck prospective juror 23 because, “My notes reflect that he sat there, looking disinterested and annoyed. He was stern when he was awake. His arms were folded.” Thompson’s counsel replied that he did not observe those characteristics and thought prospective juror 23 “seem[ed] an honest, intelligent man.” The only rationale the district court offered for its decision to deny the Batson challenge was, “They’ve provided me with a race-neutral explanation for striking the juror” and “I find the government’s explanation credible.” But, as Snyder explains, when faced with a demeanor-based justification regarding a prospective juror that has not yet been dismissed by the court, the court “must evaluate not only whether the prosecutor’s demeanor belies a discriminatory intent, but also whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” 552 U.S. at 477, 128 S.Ct. 1203 (emphasis added). The requisite second determination — that the juror’s demeanor can credibly-be said to have exhibited the basis asserted by the government — is absent from the record, and that is the gap we face. On the present record, we cannot say that the district court properly carried out its duty of making that determination on the record in choosing to deny the Batson challenge. Accordingly, I would remand for the district court to provide the missing determination or, if doing so proves impossible due to the passage of time, to vacate Thompson’s conviction and grant him a new trial. See McMath, 559 F.3d at 666; Rutledge, 648 F.3d at 562; see also In re TWL Corp., 712 F.3d 886, 898 (5th Cir.2013) (“When, because of absence of findings of fact or conclusions of law, an appellate court cannot determine whether the record supports the lower court decision, it should remand the action for entry of findings of fact and conclusions of law.”) (alteration and citation omitted); Topalian v. Ehrman, 3 F.3d 931, 935-36 (5th Cir.1993) (remanding for “further factual findings” because the district court “failed to articulate its findings” and we require “an adequate record for appellate review”).
It bears mentioning that none of this analysis is affected by Thaler v. Haynes, 559 U.S. 43, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010) (per curiam), rev’g 526 F.3d 189 (5th Cir.2008). There, the Court faced circumstances in which two different state judges presided at different stages of the ease, and the judge who ruled on the Bat-son challenges did not preside during voir dire, meaning that the latter judge had not personally observed the voir dire or any of the prospective jurors that were stricken. The issue in Haynes was whether Snyder “clearly established” (as required by the habeas statute, see 28 U.S.C. § 2254(d)(1)) the rule that a state judge ruling on a Batson challenge must reject a demeanor-based explanation for the strike unless the *309 judge personally observed and recalls the aspect of the prospective juror’s demeanor on which the explanation is based, which the state judge who decided the Batson challenges did not do. The answer to that question is no. See also Rutledge, 648 F.3d at 562 (discussing Haynes). Haynes said nothing about whether a district court faced with a demeanor-based explanation regarding a prospective juror who has not yet been dismissed and is still in the courthouse, within the court’s control, must consider “whether the juror’s demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.” Snyder, 552 U.S. at 477, 128 S.Ct. 1203. The answer to that question is, for the reasons I have explained, yes. Moreover, in making its ruling, the district court must consider all relevant evidence, id. at 478, 128 S.Ct. 1203 (“all of the circumstances that bear upon the issue of racial animosity”); Miller-El, 545 U.S. at 251-52, 125 S.Ct. 2317 (“all evidence with a bearing on [the plausibility of the government’s explanation]”); Batson, 476 U.S. at 93, 106 S.Ct. 1712 (“such circumstantial and direct evidence of intent as may be available”), and when the government justifies the strike on the basis of the juror’s demeanor, whether the juror’s demeanor can credibly be said to have exhibited the characteristics alleged by the prosecutor is such relevant evidence. According to Snyder, whether the juror’s demeanor can credibly be said to have exhibited the characteristics that the prosecutor alleged is a determination that the trial judge must make on the record. See Rutledge, 648 F.3d at 559 (“[I]f there is nothing in the record reflecting the trial court’s decision, then there is nothing to which we can defer.” (citing Snyder, 552 U.S. at 479, 128 S.Ct. 1203)). Haynes did not alter the trial judge’s duty to make the determinations for the record required by Snyder.
III.
For the foregoing reasons, I respectfully dissent.

. A "peremptory strike” (or “peremptory challenge”) is "[o]ne of a party’s limited number of challenges that, do not need to be supported by a reason” (that is, in the absence of a showing that the strikes were made on a discriminatory basis), as contrasted with strikes for cause, which are strikes "supported by a specified reason, such as bias or prejudice, that would disqualify the potential juror.” Black's Law Dictionary 261 (9th ed.2009). See also Fed.R.Crim.P. 24 (specifying the number of peremptory strikes afforded to each side in federal criminal trials).

. The Batson duty to determine whether a strike was discriminatory is not just a mere weighing of evidence, but an affirmative duty imposed on courts by the Constitution. The judiciary, like all other branches of government which operate under the authority of the Constitution’s Equal Protection Clause, is duty-bound to eliminate race discrimination root and branch in its respective sphere, and if courts fail to rid the jury-selection process of race discrimination to the extent feasible, they have fallen short in their constitutional duty. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 626, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (extending the Batson doctrine to civil trials between two private parties because, among other reasons, even though it is a private party, not a government attorney, making the discriminatory strike, “the objective of jury selection proceedings is to determine representation on a governmental body”); id. at 628, 111 S.Ct. 2077 ("Race discrimination within the courtroom ... mars the integrity of the judicial system and prevents the idea of democratic government from becoming a reality.”); Rutledge, 648 F.3d at 562 (“|T]he Equal Protection Clause mandates that race discrimination be eliminated from all official acts and proceedings of the State, which is most compelling in the judicial system.”) (internal quotation marks and alteration omitted); Minetos v. City Univ. of N.Y., 925 F.Supp. 177, 183 (S.D.N.Y.1996) *306 (Motley, J.) (“[R]acial discrimination in the qualification or selection of jurors offends ... the integrity of the courts.”).

. It warrants brief mention that, in the ordinary case, the prospective juror subject to the peremptory strike will still be in the courthouse at the time the Batson challenge is raised because we require Batson challenges to be made before the venire is dismissed. See United States v. Abou-Kassem, 78 F.3d 161, 167 (5th Cir.1996).

. Cf. Palmer v. Lares, 42 F.3d 975, 979-80 & n. 6 (5th Cir.1995) (affirming magistrate judge’s findings on a Batson challenge when the attorney justified the strike on the basis of, among other things, the prospective juror’s demeanor appearing to be “hostile” to the court and the magistrate judge’s agreement that, based on the judge’s own interaction with the prospective juror, the judge "felt the hostility that [the attorney] had pointed out”); Durant v. Stack, 151 F.Supp.2d 226, 231-32 (E.D.N.Y.2001).