In the

# United States Court of Appeals
### For the Seventh Circuit

No. 14-3652

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

J.B. BROWN, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois, Urbana Division.
No. 14-CR-20007 — **Colin S. Bruce**, *Judge.*

ARGUED NOVEMBER 12, 2015 — DECIDED JANUARY 4, 2016

Before BAUER, FLAUM, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* During jury selection for defendant
J.B. Brown's trial, the government used a peremptory strike to
remove one of the two African American members of the ve-
nire. Brown objected under *Batson v. Kentucky*, 476 U.S. 79
(1986), and the government proffered a race-neutral justifica-

tion for the strike. The district court found that the government's justification was sincere and rejected Brown's *Batson* challenge. Following trial, the jury found Brown guilty.

On appeal, Brown argues that the district court improperly rejected his *Batson* challenge. Accordingly, he claims that he is entitled to a reversal of his conviction. We disagree and affirm the judgment of the district court.

## I. Background

On June 26, 2013, Brown was arrested after making a controlled purchase of heroin. Police found Brown at his residence with over 100 grams of heroin, a loaded semi-automatic pistol, drug trafficking items, and more than $4,000 in cash. During interrogation, Brown admitted on videotape that he possessed both the heroin and the firearm.

Brown was charged in the Central District of Illinois with possession of 100 grams or more of heroin with intent to distribute pursuant to 21 U.S.C. § 841 and with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Brown pled not guilty and requested a jury trial.

Jury selection took place on July 29, 2014. The panel consisted of twenty-eight potential jurors and four potential alternates. Two members of the panel were African American. Prior to jury selection, the panel members had completed questionnaires. These questionnaires asked a number of standard questions, including questions about age, residence, education, and relationship with law enforcement. The questionnaires also asked "the arrest questions":

> 39. Have you, any member of your family or close friend(s) ever been arrested, prosecuted or convicted of a criminal offense

> 40. If your answer is yes, state who and what of-
> fense was charged, and the outcome

The questionnaires did not ask about race. Both Brown and the government had an opportunity to review the panel's responses prior to jury selection.

That same day, the potential jurors came before the district court. The court asked the panel a number of questions. Jury selection moved quickly. Although the district court offered both parties the opportunity to ask individual follow-up questions, neither party asked any questions.

Following questioning, and outside the presence of the venire, the government exercised its peremptory strikes. After the government used its fifth peremptory strike against Juror 74, an African American, Brown objected. The government proffered a race-neutral justification for the strike. The government pointed to Juror 74's response to the arrest questions, to which he answered, "Yes. Warrant for my arrest, wrong person." The government claimed that this response "jumped out to us as a person … who would be thought to have bias against law enforcement," thus justifying the strike. The government claimed that Juror 74 was on its "list" of potential strikes prior to even seeing the venire.

The district court found that the government had proffered a race-neutral justification. But Brown contended that the government was being insincere. He pointed out that the government did not ask about Juror 74's arrest during jury selection when his response "could have been clarified." The government claimed that it did not want to address the issue in front of the other potential jurors, to which Brown responded that the government could have taken a sidebar.

Brown emphasized that, as a result of the strike, the government left only one African American on the panel.

The district court accepted the government's proffered justification and rejected Brown's objection. It found that the justification was corroborated by Juror 74's questionnaire. The court also concluded that the government was sincere and was not trying to deceive the court as to its real motive for the strike.

Later in the proceedings, at the government's request, the district court revisited Brown's *Batson* challenge. The government asserted that it had reviewed all of the questionnaires and that Juror 74 was the only one to indicate that he had been falsely arrested. The court stated that it had also reviewed the juror questionnaires and agreed with the government. The court asked Brown whether he agreed with the government's analysis of the questionnaires and he responded, "I don't doubt it."

After a two-and-a-half day trial, the jury convicted Brown of both counts. The court sentenced him to 174 months' imprisonment. This appeal followed.

## II. Discussion

*Batson v. Kentucky* establishes a three-step framework for challenging a peremptory strike. 476 U.S. 79 (1986). First, the defendant must make out a prima facie case that a strike was exercised on the basis of race. *Id.* at 94. Second, the government must articulate a race-neutral justification for the strike. *Id.* at 97. Third, the trial court must determine whether the defendant has shown purposeful discrimination. *Id.* at 98.

We review a district court's *Batson* findings for clear error. *United States v. Yarrington*, 640 F.3d 772, 778 (7th Cir. 2011). We

give substantial deference to a district court's credibility de-terminations. *Id.* at 779. However, where the plaintiff alleges that the district court committed legal error by conducting a *Batson* inquiry improperly, our review is de novo. *United States v. McMath*, 559 F.3d 657, 663 (7th Cir. 2009).

In response to Brown's *Batson* objection, and without re-quiring Brown to establish a prima facie case, the government proffered a race-neutral justification for striking Juror 74: The juror was potentially biased against law enforcement as a re-sult of his wrongful arrest. The district court determined that this justification was credible and that Brown failed to show purposeful discrimination.

The gravamen of Brown's argument on appeal is that the government applied its race-neutral justification inconsist-ently, thus demonstrating that the justification was pretextual. According to Brown, the government's justification—poten-tial bias against law enforcement—applied equally well to three other potential jurors based on their responses to the ju-ror questionnaire. Yet, the government did not strike these ju-rors. In particular, Juror 81 stated that he had been arrested for assault but that the charges were dropped. Juror 3 stated that he had been charged and convicted for driving under the influence. And Juror 13 did not respond to the arrest ques-tions at all. Brown insists that these responses showed as much potential for bias against law enforcement as Juror 74's response.

Brown makes two related arguments based on the re-sponses of these three other potential jurors. First, Brown con-tends that the district court did not consider the responses of Jurors 81, 3, and 13 in finding that the government's race-neu-tral explanation was credible. Accordingly, Brown claims that

the district court did not consider all material evidence in evaluating his *Batson* challenge.

"[A]ll of the circumstances that bear upon the issue of racial animosity must be consulted" in conducting a *Batson* inquiry. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008); *see also United States v. Stephens*, 514 F.3d 703, 712 (7th Cir. 2008) ("[W]e cannot defer to a district court decision that ignores material portions of the record without explanation."). Although Brown would have us believe otherwise, the district court did consider the questionnaires of the three other potential jurors. When the government stated that it had reviewed all of the questionnaires and that Juror 74 was the only potential juror who indicated that he had been falsely arrested, the court responded that it too had "reviewed all … the juror information sheets, and that is a correct statement." Therefore, the court did consider all of the material evidence in conducting its *Batson* inquiry.

Brown maintains that the district court erred because it did not consider his comparison argument—that three other jurors were similarly situated to Juror 74. But the court is not required to anticipate arguments based on that evidence. It is the defendant's burden to raise specific arguments that the government's justification was pretextual so that the court can properly address them. *See United States v. Hendrix*, 509 F.3d 362, 371 (7th Cir. 2007) (rejecting the defendant's *Batson* argument in part because he "did not challenge the prosecution's explanations during voir dire, nor did he offer any reasons for the court to cast doubt on the explanations for the strikes … where the court could have addressed any concerns"). Brown cannot demonstrate that the district court erred by alleging that it failed to consider an argument he never raised.

Second, Brown argues that the government's use of a strike against Juror 74 but not Jurors 81, 3, or 13, demonstrates that its proffered justification was pretextual.[1] Both the Supreme Court and this Court have approved of the use of side-by-side comparisons to show that a proffered justification was in fact pretextual. *See, e.g.*, *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005); *Stephens*, 514 F.3d at 711. However, the jurors that Brown points to were not similarly situated to Juror 74. With regard to Juror 81, having charges dropped is distinguishable from being wrongly arrested. The fact that charges are dropped does not affirmatively suggest innocence in the way a wrongful arrest does. Additionally, Juror 81 indicated that he had relatives in law enforcement, whereas Juror 74 did not.

As for Juror 3, being charged and convicted is readily distinguishable from being wrongly arrested. A conviction indicates guilt, whereas a wrongful arrest indicates innocence. Moreover, Juror 3 had been the victim of the crime while Juror 74 had not and Juror 3 had previously served on a state grand jury while Juror 74 had not.

Finally, regarding Juror 13, a blank response does not affirmatively suggest bias against law enforcement. More problematically, Juror 13 was the only other African American on the venire. A side-by-side comparison of two African Americans, one who is allowed to serve as a juror and one who is

---

[1] The government argues that Brown forfeited this argument because he never raised these comparisons before the district court. Nevertheless, *Snyder* suggests that "a retrospective comparison of jurors based on a cold appellate record" is permissible in at least some circumstances. 552 U.S. at 483. And because we conclude that the substance of Brown's comparison argument lacks merit, we need not address the government's forfeiture argument.

struck, does not support a finding of pretext. *See Miller-El*, 545 U.S. at 241 (approving of comparisons between "a black panelist" and "an otherwise-similar *nonblack* who is permitted to serve" (emphasis added)). In fact, Brown's argument actually cuts against him—if the government had intended to discriminate, it may well have struck Juror 13 as well as Juror 74. *See United States v. Cruse*, 805 F.3d 795, 808–09 (7th Cir. 2015) (noting that the racial makeup of the final jury panel is relevant in assessing the government's intent). In sum, Brown has not shown that the government's justification of potential bias against law enforcement "applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve … ." *Miller-El*, 545 U.S. at 241.

Next, Brown argues that if the government was truly concerned that Juror 74 was biased against law enforcement, it should have asked him a follow-up question during the voir dire. As an initial matter, we are skeptical as to whether the failure to ask a follow-up question in this case suggests pretext. The jury selection process moved quickly and neither counsel asked any questions. Thus, it appears likely that the government did not want to interrupt the flow of the proceeding, not that it was trying to deceive the court. Additionally, it is difficult to see how follow-up questions would have clarified Juror 74's response in any meaningful way. Perhaps further questioning could have revealed the nature of Juror 74's wrongful arrest or ensured that Juror 74 understood the arrest questions properly. But Juror 74's response was clear enough on its face that it is unlikely that further questions would have changed the government's impression that Juror 74 potentially harbored bias against law enforcement.

Even assuming *arguendo* that the government's failure to ask Juror 74 follow-up questions did constitute evidence of pretext, Brown presented this exact same argument to the district court. Yet, the court credited the government's race-neutral explanation over Brown's argument. In particular, the court read Juror 74's responses and found "that [the response] does not require any clarification." And the court concluded that the government's justification was sincere. Brown has not offered any reason for us to second guess the district court's credibility finding on appeal. *See Yarrington*, 640 F.3d at 780. Thus, the district court did not clearly err.

Finally, Brown suggests that the government's proffered justification for the strike—bias against law enforcement—is not race-neutral because African Americans are disproportionately affected by negative interactions with law enforcement. Even accepting the premise of this argument, it does not support a finding of pretext. *Batson* protects against intentional discrimination, not disparate impact. *See Cruse*, 805 F.3d at 806 ("[D]efendants must show that the government used its peremptory strikes with discriminatory *intent*; disparate *impact* does not violate the Equal Protection Clause." (citation omitted)). Moreover, we have acknowledged that bias against law enforcement is a legitimate race-neutral justification. *See, e.g., United States v. Smallwood*, 188 F.3d 905, 915 (7th Cir. 1999).

Therefore, we conclude that the district court correctly conducted the *Batson* inquiry and did not clearly err in dismissing Brown's challenge.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.