In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1753

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

*Plaintiff-Appellant*,

*v.*

AUTOZONE, INCORPORATED, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:12-cv-00303-WEC — **William E. Callahan, Jr.**, *Magistrate Judge.*

ARGUED SEPTEMBER 30, 2015 — DECIDED JANUARY 4, 2016

Before BAUER, RIPPLE, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, the Equal Employment Opportunity Commission ("EEOC"), filed suit against defendant-appellee, AutoZone, Incorporated ("AutoZone"), for dismissing Margaret Zych ("Zych") from AutoZone's Cudahy, Wisconsin, location in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Specifically, the EEOC alleged that AutoZone failed to accommodate Zych's

lifting restriction and that Zych's termination constituted discrimination on account of her disability. After a five-day trial, the jury returned a verdict in favor of AutoZone, finding that Zych was not a qualified individual with a disability or a record of disability. The EEOC filed a motion for a new trial, which the district court denied. The EEOC appealed. For the reasons that follow, we affirm the district court.

## I. BACKGROUND

AutoZone sells automobile parts in retail stores located throughout the United States. AutoZone has a store located in Cudahy, Wisconsin, which has a minimum staffing requirement of two to three employees in the store at all times. In 2005, Zych began working at the Cudahy, Wisconsin, AutoZone. In 2007, she was promoted to Parts Sales Manager ("PSM").

In July 2007, Zych injured her right shoulder while at work. She underwent two years of physical therapy and treatment for her shoulder. During those two years, she had several work restrictions, which AutoZone accommodated. In June 2009, Zych's doctor permanently restricted her from lifting anything with her right arm that weighed over 15 pounds. About one month later, AutoZone discharged Zych because it was unable to accommodate her permanent restriction.

Zych filed a charge with the EEOC, and on March 28, 2012, the EEOC filed suit against AutoZone claiming that it failed to accommodate Zych's lifting restriction and illegally terminated her employment. A jury trial was held from November 17-21, 2014. At the close of AutoZone's evidence, the EEOC moved for judgment as a matter of law on the issue of whether Zych

was "disabled" under the meaning of the ADA. The court denied the motion.

Before the case was submitted to the jury, the EEOC offered a proposed "team concept" jury instruction regarding how to determine the essential functions of a job position. The proposed team concept instruction stated:

> In team working environments, where team members per-form tasks according to their capacities and abilities, job functions that are not required of all team members are not essential functions. Where there is no required manner in which employees are to divide the labor, the fact that one team member may not be able to do all the tasks assigned to the team does not mean that person is unable to perform his or her essential functions.

The district court rejected the proposed instruction because it found the instant matter was factually distinguishable from prior cases dealing with the EEOC's proposed team concept. The judge said that the EEOC could argue this theory to the jury in closing arguments. The EEOC did not do so; it argued that the essential function of the PSM position was "customer service," and that lifting was just a "marginal function."

The jury returned a special verdict finding that the EEOC failed to prove by a preponderance of the evidence that Zych was a "qualified individual with a disability or a record of disability at the time that her employment was terminated." Following the verdict, the EEOC moved for a new trial. In support of its motion, the EEOC argued: (1) the verdict was against the manifest weight of the evidence; (2) the medical

evidence established that Zych was disabled as a matter of law; and (3) the jury instructions confused the jury. The district court denied the motion.

## II. DISCUSSION

The EEOC now appeals the district court's denial of its motion for a new trial. We address each of the issues raised by the EEOC in turn.

### A. Sufficiency of the Evidence Supporting the Jury Verdict

We apply the "abuse of discretion" standard of review to examine the district court's denial of the EEOC's motion for a new trial on the basis that the verdict was against the manifest weight of the evidence. *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (citation omitted). We will only set aside the verdict and remand for a new trial if "no rational jury could have rendered" the verdict. *Smith v. Wilson*, 705 F.3d 674, 677–78 (7th Cir. 2013) (citations omitted). This analysis involves examining the evidence in the light most favorable to AutoZone, while "leaving issues of credibility and weight of evidence to the jury." *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006) (citation omitted).

To establish a prima facie failure to accommodate claim under the ADA, the EEOC had to show that: (1) Zych was a qualified individual with a disability; (2) AutoZone was aware of her disability; and (3) AutoZone failed to reasonably accommodate her disability. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013) (citation and quotation omitted). In this case, the jury found that the EEOC failed to

prove the first element, so the issue is whether a rational jury could have found that Zych was not a qualified individual with a disability.

Under the ADA, a "qualified individual" is someone who, "with or without reasonable accommodation, can perform the *essential functions* of the employment position" at issue. 42 U.S.C. § 12111(8) (emphasis added). In addition, EEOC regulations clarify that essential functions are the "fundamental job duties" of the position, as opposed to the "marginal functions." 29 C.F.R. § 1630.2(n)(1). Further, the employer's judgment, the amount of time performing the function at issue, the work experience of prior employees in the same position, and written job descriptions are among the relevant evidence that can be considered to determine the essential functions of a position. 29 C.F.R. § 1630.2(n)(3).

Here, Zych was unable to lift more than 15 pounds with her right arm. Thus, if the evidence at trial showed that heavy lifting was a fundamental duty of the PSM position, as opposed to a marginal function, then a rational jury could have found that Zych was not a qualified individual with a disability.

At trial, AutoZone presented testimony from former PSMs at the Cudahy, Wisconsin, location regarding the lifting requirements of a PSM. For example, Angel Maldonado ("Maldonado") testified that the PSM job functions included lifting and moving the items at the store, as well as the items brought in by the customers, at least 30-40 times per day. Maldonado agreed that lifting the products sold at the store was a "regular part" of the job, and that when he initially

received the PSM position, he understood that it involved "heavy lifting." Tabari Stewart ("Stewart"), another former PSM at the Cudahy, Wisconsin, location, testified that it was a regular aspect of customer assistance to retrieve an item from the store, hold it for the customer to inspect, and even carry the item to the customer's car. In addition, the testimony at trial established that the items at the store could weigh substantially more than 15 pounds. For example, car batteries could weigh anywhere from 25 to 75 pounds. Cases of antifreeze and motor oil weighed around 30 pounds. AutoZone also established an itemized list of other products within the store that weighed over 15 pounds, such as brakes, rotors, brake drums, ready-mount struts, and radiators.

The testimony also brought out that the PSM position involved performing customer service functions that required heavy lifting, such as charging customers' batteries, installing car batteries, and recycling customers' oil (which could weigh up to 20-30 pounds). The PSM had to organize "planograms" as well. Planograms involve the way that the products are arranged on the shelves throughout the store. Stewart testified that the PSM sometimes had to conduct a "full reset" planogram, in which all of the products (which could weigh over 40 pounds each) had to be removed from the shelves, the shelves re-arranged, and then the products re-stacked.

AutoZone further produced evidence regarding "truck days." Truck days occurred once a week, and involved unloading items from delivery trucks in order to re-stock the supply at the store. Truck days involved moving both light and heavy items, but even the light items could be heavier if they were stored in "totes." Stewart testified that truck days

involved "nothing but lifting," and that the PSM was expected to lift along with all of the other AutoZone employees. In addition to truck days, the PSM position was also responsible for handling daily "hub deliveries," which could also involve heavy items that sometimes weighed over 20 pounds.

Finally, AutoZone introduced a written job description regarding the physical functions involved with the PSM position. Under "Arm Requirements," it states that the position requires "constantly" carrying items up to 50 pounds, but "usually 10 to 20 pounds." It also states the PSM must "frequently" lift items up to 75 pounds from floor to waist, and up to 25 pounds horizontally. In addition, the position involves "constantly" reaching or working with arms extended or bent, and "frequently" twisting or rotating. Stewart testified that the written job description accurately reflected the physical requirements and tasks of the PSM, as did Maldonado who agreed that it included the key duties of the position. While Zych acknowledged that the written job description represented the tasks that she performed as a PSM, she disagreed with the phrase "constantly," and stated that the position also involved paperwork.

From the substantial evidence presented at trial, a rational jury could have concluded that heavy lifting was a fundamental duty of the PSM position, rather than merely a marginal function. Since Zych could not lift more than 15 pounds with her right arm, there was sufficient evidence for a rational jury to find that she could not perform the essential functions of the PSM position. Thus, a rational jury could find that Zych was not a qualified individual with a disability. Therefore, the verdict was not against the manifest weight of the evidence

and the district court did not abuse its discretion in denying the motion for a new trial.[1]

Also, the EEOC points out that Barry Kurta ("Kurta"), another employee at the Cudahy, Wisconsin, AutoZone, had a paralyzed left arm and could only lift objects with his right arm. The EEOC argues that if Zych is not qualified because of her lifting restriction with her right arm, then Kurta should be deemed unqualified as well, and the fact that he is not means that Zych should be deemed a qualified individual with a disability. AutoZone responds that Kurta is a "red herring"; he was a part-time employee with a different position than Zych, which meant that he would never be alone in the store. Further, Kurta had no official lifting restriction, although there was testimony that he needed help lifting objects that were too awkwardly shaped to carry with one arm. Kurta also stated that he did not do heavy lifting when he waited on customers. But, there was testimony that he could lift heavy items such as rotors and car batteries with one arm, and he participated in lifting on truck days. In contrast, Maldonado testified that he did not see Zych lift rotors or other heavy items with one arm.

As discussed above, regardless of Kurta's status, there is sufficient evidence in the record to support the jury's verdict that Zych was not a qualified individual with a disability. "Our

---

[1] Since we are upholding the jury's finding that Zych was not a "qualified individual with a disability," the issue of whether Zych was disabled as a matter of law is moot and we need not discuss it. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013) ("We don't need to decide whether [the plaintiff] has a disability, though, because there was no issue of fact as to whether [she] was a qualified individual").

appellate function is completed when we are convinced that there is an evidentiary basis in the record for the jury's verdict … 'it [is] immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.'" *Rogers v. ACF Indus., Inc.*, 774 F.3d 814, 819 (7th Cir. 1985) (citing *Lavender v. Kurn*, 327 U.S. 645, 652–54 (1946)). "The fact that [the EEOC] presented evidence that is inconsistent with the jury's verdict does not mean that the verdict should be reversed." *Lowe v. Consol. Freightways of Del., Inc.*, 177 F.3d 640, 643 (7th Cir. 1999) (citation omitted). Thus, while it may be inconsistent for AutoZone to find that Kurta is qualified but Zych is not, it does not mandate this court to set aside the jury's verdict.

## B. Denial of Proposed Team Concept Jury Instruction

The EEOC acknowledges that the district court's jury instructions for determining an "essential function" of a job correctly cite the applicable federal regulations. However, the EEOC argues that the district court's denial of its proposed team concept instruction provided the jury with an "incomplete and misleading" statement of the law, which confused the jury and prejudiced the EEOC. We disagree.

"We review the district court's refusal to give a jury instruction only for abuse of discretion." *Rapold v. Baxter Int'l Inc.*, 718 F.3d 602, 609 (7th Cir. 2013) (citation omitted). We examine the jury instructions as a whole, and only reverse and remand for a new trial if the instructions did not sufficiently inform the jury of the applicable law *and* the instructions prejudiced the EEOC. *Id.* (citations omitted). "Even if we believe that the jury was confused or misled, we would need

to find that the [EEOC] [was] prejudiced before ordering a new trial." *Jimenez v. City of Chicago*, 732 F.3d 710, 717 (7th Cir. 2013) (citations omitted).

The EEOC relies exclusively on *Miller v. Illinois Department of Transportation*, 643 F.3d 190 (7th Cir. 2011), to support its argument that the district court had to allow its proposed jury instruction. We agree with the district court that this case is factually distinguishable from *Miller*.

In *Miller*, the plaintiff was a member of six-person bridge crew for the Illinois Department of Transportation ("IDOT"), which was responsible for a wide variety of tasks. *Miller*, 643 F.3d at 192. Once the plaintiff began his employment with IDOT, he informed his team leader that had a fear of heights and that there were a few discrete tasks (such as "walk a bridge beam") that he could not do. *Id.* IDOT informally accommodated the plaintiff by having another member of the bridge crew perform the duties involving heights. *Id.* at 193. IDOT also informally accommodated other members of the bridge crew who could not perform other discrete tasks in a similar manner. *Id.* These included one member who could not weld, one who would not ride in the "snooper bucket," and another who would not spray bridges or mow the yards due to his allergies. *Id.* The court found that "[o]n this record, a reasonable jury could find that working at heights … was not an essential function for [the plaintiff] as an individual member of the bridge crew." *Id.* at 198. The court also distinguished prior cases in which reassigning an essential function to another co-worker did not constitute a reasonable accommodation, and stated that "[w]hat sets this case apart from those earlier cases is [plaintiff's] evidence that it was in fact the

normal course for individual members of the bridge crew to substitute and reassign tasks among themselves according to individual abilities, preferences, and limitations." *Id.* at 199–200.

The EEOC argues that its proposed team concept instruction was necessary because the staffing at the Cudahy, Wisconsin, AutoZone store presents a similar team work environment as the IDOT bridge crew in *Miller*. The EEOC supports this comparison by citing a passage from the AutoZone employee handbook that states that employees should "ask for help when needed" if lifting heavy objects. In addition, the EEOC notes that employees at AutoZone were evaluated based on "teamwork" and whether the employee "helps the team succeed." The EEOC also relies on testimony from multiple AutoZone employees who acknowledged helping Zych (and Kurta) lift heavy objects, as well as Zych's own testimony that before her injury other co-workers had occasionally helped her or "other women" lift heavy items that she or the other women could not carry by themselves. Finally, the EEOC notes that during truck days, Zych testified that she would often do the scheduling and other paperwork that her co-workers in the PSM position did not know how to do, and in exchange those co-workers would do Zych's lifting instead.

We disagree with the EEOC's comparison between this case and *Miller*. First, since it is common practice for employers to promote cooperation and teamwork amongst their employees, the fact that AutoZone uses teamwork as a criteria for evaluating its employees did not mandate the district court to admit the EEOC's proposed jury instruction. Second, the evidence presented does not show a distribution of labor system in

which the "normal course" was for Zych to substitute and reassign discrete tasks involving lifting certain heavy items and in exchange other employees did not do discrete tasks that they were unable to do. Rather, the record indicates that if Zych, or anyone else, needed help lifting something, someone would help them, which both the employee guidelines and common courtesy dictate.

This case is more factually analogous to cases involving lifting restrictions in which the proposed accommodation was requiring someone else to do the lifting for the employee at issue. Here, as in those cases, such an accommodation is not reasonable because it is essentially delegating the PSM position to another employee. *See James*, 707 F.3d at 778, 783 (finding it was not a reasonable accommodation for a banquet steward at a hotel with a lifting restriction to delegate lifting objects involved with maintaining the banquet hall and transporting food and equipment to another employee at the hotel); *see also Majors*, 714 F.3d at 531, 534 (employee with lifting restriction was not qualified for position that involved "intermittent movement of heavy objects," and having another employee do the lifting was not a reasonable accommodation).

Furthermore, "a judge need not deliver instructions describing all valid legal principles." *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994). "Rather than describing each possible inference of the evidence, the judge may and usually should leave the subject of the interpretation of the evidence to the argument of counsel." *Hasham v. Cal. State Bd. of Equalization*, 200 F.3d 1035, 1051 (7th Cir. 2000) (citation omitted). In this case, the EEOC's proposed team concept instruction was an attempt to have the jury draw an inference that heavy lifting

was not an essential function of the PSM position because Zych's co-workers could lift the items that Zych was unable to. The district court was not obligated to promulgate such an inference within the jury instructions. Rather, it was proper for the district court to instead allow the EEOC to make its team concept argument to the jury in its closing arguments.

Finally, the district court's denial of the proposed instruction did not prejudice the EEOC. We determine whether the EEOC was prejudiced by examining "the instructions as a whole, along with all of the evidence *and arguments*, to determine whether the jury was misinformed about the applicable law." *United States v. White*, 443 F.3d 582, 587–88 (7th Cir. 2006) (emphasis added) (quotation and citation omitted). Although the district court denied the instruction, the judge allowed the EEOC to argue its team concept theory to the jury during its closing arguments. Yet, the EEOC abandoned this theory, and instead claimed during closing arguments that heavy lifting was a "marginal function" of the PSM position. Since the EEOC decided not to present the team concept argument, despite the district court expressly stating that it could, the EEOC cannot now claim that it was prejudiced by the district court's refusal to admit its proposed jury instruction.[2]

---

[2]   The EEOC also notes that during deliberations the jury asked for permission to express its views on AutoZone's conduct. The EEOC interprets this request to mean that even though the jury believed that heavy lifting was an essential function, the jury wanted AutoZone to allow Zych "to continue receiving help." The EEOC claims that this indicates that if the proposed jury instruction was admitted, it would have led the jury to vote differently. Therefore, the EEOC claims it was prejudiced. This

(continued...)

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[2] (...continued)
argument is pure speculation, and is insufficient to invalidate the jury's verdict.