In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-2111

AKIL K. CARTER, PAULETTE H. BARR, and SANDRA K. ADAMS,

*Plaintiffs-Appellants*,

*v.*

CITY OF WAUWATOSA, *et al.*,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:19-cv-1422 — **J.P. Stadtmueller**, *Judge*.

———————————

ARGUED APRIL 15, 2024 — DECIDED AUGUST 14, 2024

———————————

Before KIRSCH, PRYOR, and KOLAR, *Circuit Judges*.

KOLAR, *Circuit Judge*. In 2018, Defendant-Appellee Patrick Kaine conducted a vehicle stop to investigate a potential robbery following a tip from a citizen. Plaintiffs-Appellants Akil Carter, Paulette Barr, and Sandra Adams were in the car stopped by Officer Kaine. During the stop, Officer Kaine handcuffed Carter and put him in the back of his squad car while he spoke with Adams and Barr, who remained in their vehicle. While investigating, Officer Kaine realized that the

tipster had been mistaken: no robbery had occurred, nor was one in progress. After he confirmed that no criminal activity was afoot, he uncuffed Carter and sent the three individuals on their way. Following the incident, Carter, Barr, and Adams sued Officer Kaine, the other officers involved in the stop, and the City of Wauwatosa, asserting violations of their Fourth Amendment right to be free from unreasonable seizure. The case proceeded to trial, and the jury found in favor of the defendants.

On appeal, the plaintiffs contest the district judge's decision to bifurcate the trial, the jury instructions, the exclusion of their police-practices expert, and the judge's failure to recuse himself. We find no error in those rulings. The plaintiffs, however, also appeal the district judge's denial of their challenge to a peremptory strike under *Batson v. Kentucky*, 476 U.S. 79 (1986). Because the record is insufficient for us to affirm the district judge's denial of the *Batson* challenge, we remand for additional findings by the district judge.

## I.      Background

In September 2018, City of Wauwatosa police officer Patrick Kaine was patrolling when a citizen flagged him down with a tip about a robbery in progress. The citizen told Officer Kaine that he had witnessed a Black man robbing two white women inside a blue Lexus.

In response, Officer Kaine drove to locate the Lexus containing the women and alleged robber. Once he located the Lexus, he followed it until it began to turn onto a highway onramp. At this point, Officer Kaine initiated a vehicle stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and immediately called for backup because he believed that the robber might

have possessed a firearm. Barr and Adams, both white
women, were in the front seats, and Carter, a Black man, was
in the back seat, which was consistent with the tipster's de-
scription.

Once backup arrived, Officer Kaine ordered Carter to exit
the car. Carter exited the Lexus and complied with all of Of-
ficer Kaine's commands. Officer Kaine, with help from an-
other officer, handcuffed Carter and placed him in the back
seat of a squad car with the door open.

Officer Kaine approached the Lexus, where he quickly
learned that the tip he received was entirely inaccurate. Barr
and Adams immediately told Officer Kaine that there was no
robbery in progress. Instead, Barr explained that Carter was
her grandson, not a thief, and that the three were on their way
to get ice cream. Officer Kaine apologized for the inconven-
ience, uncuffed Carter, and told them that they were free to
go. Carter had been handcuffed for five minutes. The stop
lasted roughly eleven minutes in total.

Following the stop, Carter, Barr, and Adams filed suit in
state court against Officer Kaine, the City of Wauwatosa, and
the other officers who provided backup that day. Their com-
plaint asserted claims under 42 U.S.C. § 1983, including vio-
lations of their Fourth Amendment rights, municipal liability
under *Monell v. N.Y. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978),
state-law negligence, negligent and intentional infliction of
emotional distress, negligent hiring, false imprisonment, and
violations of the Wisconsin constitution. The defendants re-
moved to the Eastern District of Wisconsin.

The parties bitterly litigated the case and the district judge
set it for trial. In August 2022, the district judge held a final

pretrial conference. But the parties were unprepared for the conference or for trial, having filed deficient jury instructions and an insufficient verdict form. The district judge continued the trial for a few months so that the parties could confer and file appropriate instructions.

Roughly a month before the delayed trial was set to begin, on February 8, 2023, the parties convened before the district judge for another final pretrial conference. At the pretrial conference, the district judge determined that the trial would proceed only as to Officer Kaine. Thus, the jury would be asked a single question: whether Officer Kaine possessed reasonable suspicion sufficient to support the *Terry* stop. At the conference, the district judge also preliminarily excluded the plaintiffs' proposed police-practices expert, Brian Landers, stating that he did not believe that Landers' testimony would be helpful to the jury because of the limited nature of the trial. The district judge told the parties that he was open to reconsidering any of these decisions at trial.

Several days later, the plaintiffs moved for reconsideration of the preliminary decisions made at the pretrial conference. The district court denied the motion because, first, it had not made a final ruling on any issues, like jury instructions and the admissibility of expert testimony (including the testimony of Landers), and second, because proceeding as to fewer issues—that is, as to reasonable suspicion only—would be the most expedient way to try the case. The district judge noted that other issues could be handled through a Rule 54(b) motion after the trial.

So, the trial proceeded, beginning with jury selection in March 2023. At the close of voir dire, the district judge instructed the parties to exercise their peremptory strikes,

which they did off the record. After that process, plaintiffs'
counsel informed the court that plaintiffs had an objection to
one of the defense's strikes. The court again went off the rec-
ord to address the plaintiffs' objections, which were heard in
full and decided at an untranscribed sidebar. The contempo-
raneous record does not indicate what type of objection the
plaintiffs made, but the trial record later indicated that the
plaintiffs had raised a *Batson* challenge.

Two days later, after the jury had been charged and sent
to deliberate, the district judge noted that both the plaintiffs
and defendants wanted to make a record of what occurred at
the untranscribed sidebar following voir dire. Plaintiffs' coun-
sel stated for the record that she had raised a challenge under
*Batson* to the defense's strike of Juror 10. Juror 10 was a Black
woman with a master's degree who was employed by Mil-
waukee County. When Juror 10 was struck by the defense, she
was the only remaining Black individual on the venire follow-
ing the for-cause excusal of Juror 14, who was also a Black
woman. Counsel for plaintiffs stated that after she objected,
the court held a sidebar. At the request of both counsel, the
judge allowed the parties to make a post-hoc record of the ob-
jection, and the following exchange occurred:

> [DEFENSE COUNSEL]: Plaintiffs are both Cau-
> casians and persons of color …. The peremptory
> strike was based on both her master's degree
> and her employment as a Milwaukee County
> Social Service Social Worker …. Our concern in
> this case [is] … professional testimony regard-
> ing a claim of emotional injuries. That would be
> an individual who would be sympathetic.

> THE COURT: All right. And given that one of
> the plaintiffs' witnesses was a counselor, I think
> also is a contributing factor for both sides
> whether you want the individual or don't, and
> so I find for the reasons that the court stated off
> the record yesterday, that the defense has pro-
> vided a race-neutral reason for having exercised
> their peremptory strike.
>
> And I also noted for the record that this is not a
> case in which there is a single plaintiff who hap-
> pens to be a minority whether Hispanic, Asian,
> or African American. There are two plaintiffs
> who are Caucasian, so that effectively neutral-
> izes the entirety of the applicability of the Su-
> preme Court's ruling in *Batson* beyond the mat-
> ter of a race-neutral reason for the defense hav-
> ing exercised one of their peremptory strikes as
> to Juror Number 10.

Following this colloquy, plaintiffs' counsel also indicated that the district judge had stated off the record that *Batson* doesn't apply in civil cases because he had only ever seen it in criminal cases. Counsel cited *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991) in support of her position that *Batson* applies equally to civil cases. The district judge denied the *Batson* challenge without further comment.

After a two-day jury trial, the jury returned a verdict in favor of Officer Kaine, finding that he possessed reasonable suspicion to stop the Lexus and the occupants therein. After the verdict, the district judge issued a written order disposing of the remaining claims and entered judgment in favor of the officers and the City of Wauwatosa, which is not at issue in

this appeal. Plaintiffs appeal only deficiencies related to the pretrial decisions and the administration of the trial.

## II.    Discussion

The plaintiffs challenge several of the district judge's decisions on appeal. They argue that the district judge erred in denying their *Batson* challenge; excluding their police-practices expert, Landers; and failing to instruct the jury on the difference between a *Terry* stop and an arrest. The plaintiffs also contend that the district judge should have recused himself and that he improperly granted summary judgment *sua sponte* in allowing the trial to proceed only as to Officer Kaine and the subject of reasonable suspicion. Finally, the plaintiffs assert that cumulative error requires a new trial.

The plaintiffs are correct that the district judge did not properly conduct the *Batson* inquiry, and we will remand for further factual findings consistent with this opinion. The plaintiffs' remaining arguments, however, entirely lack merit. We thus affirm in all other respects.

### A. *Batson*

Excluding "even a single prospective juror on account of race, ethnicity, or gender violates the Equal Protection clause." *United States v. Rutledge*, 648 F.3d 555, 558 (7th Cir. 2011) (citing *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008)) (cleaned up). The three-step *Batson* process is well-established. First, the challenger must make out "a prima facie case of purposeful discrimination." *Batson*, 476 U.S. at 93–94. The burden at the prima facie stage is low, "requiring only circumstances raising a suspicion that discrimination occurred, even where those circumstances are insufficient to indicate that it is more likely than not that the challenge was used to

discriminate." *Lisle v. Welborn*, 933 F.3d 705, 714 (7th Cir. 2019). If the district judge proceeds past step one and rules on the ultimate issue of pretext, the question of whether the challenger stated a prima facie case becomes moot. *Hernandez v. New York*, 500 U.S. 352, 359 (1991).

If the challenger makes out a prima facie case, the burden shifts to the striking party to provide a race-neutral explanation for the strike. *Batson*, 476 U.S. at 97. At this second step, the proffered reasons must be "clear and reasonably specific" and "related to the particular case." *Coulter v. Gilmore*, 155 F.3d 912, 917 (7th Cir. 1998).

If such a reason is provided, the district judge must assess whether the race-neutral reasons provided by the striking party are pretext for racial discrimination. "Step three, at which the trial court weighs the evidence and determines whether the strike's opponent has proved purposeful discrimination, is the heart of the matter." *United States v. Lovies*, 16 F.4th 493, 500 (7th Cir. 2021) (cleaned up). The district court must make credibility determinations at this stage. *Lisle*, 933 F.3d at 715; *Morgan v. City of Chicago*, 822 F.3d 317, 331 (7th Cir. 2016).

The three steps of *Batson* are analytically distinct, *United States v. Rutledge*, 648 F.3d 555, 560 (7th Cir. 2011), and "[w]e encourage district courts to follow each of *Batson*'s three steps in sequence and to develop a comprehensive record as to each step." *Lovies*, 16 F.4th at 503. Our cases make clear that a district judge must proceed to and through the third step if she reaches the first two. *See id.* at 500; *United States v. McMath*, 559 F.3d 657, 663–65 (7th Cir. 2009).

We review whether a district judge properly conducted the three-step *Batson* inquiry de novo but review a district court's step-three factual findings for clear error. *McMath*, 559 F.3d at 663; *United States v. Watkins*, 107 F.4th 607, 619 (7th Cir. 2024). This means we will affirm a district judge's step-three findings unless we arrive at a "definite and firm conviction that a mistake has been made." *McMath*, 559 F.3d at 670. Since the trial judge is in the best position to make factual determinations, we only disturb such findings if "the reason given is completely outlandish or there is other evidence which demonstrates its falsity." *United States v. Stafford*, 136 F.3d 1109, 1114 (7th Cir. 1998).

*Batson*'s third step requires that the district judge make factual findings on the record regarding whether the striking party's proffered reason for the strike is pretextual. *Snyder*, 522 U.S. at 477; *Morgan*, 822 F.3d at 331. We often refer to this finding as a credibility determination. *Rutledge*, 648 F.3d at 558 ("Credibility determinations can be made in many ways, and for that reason we treat the district court's findings at step three as findings of fact."). Failure to make the step-three credibility determination is a legal error that satisfies any standard of review. *McMath*, 559 F.3d at 666 n.2. Further, we cannot substitute our judgment for that of the district court— factual findings at *Batson*'s third step lie "within a trial judge's province." *Snyder*, 522 U.S. at 477 (cleaned up). And while the district judge need not use any magic words in completing the step-three inquiry, he must do more than summarily deny the challenge or merely categorize the striking party's reason as race-neutral. *McMath*, 559 F.3d at 666; *Rutledge*, 648 F.3d at 560.

In cases where the district judge fails to appropriately pro-
ceed to or conduct *Batson*'s third step, we have consistently
remanded for additional findings by the district judge. *E.g.,*
*United States v. Watkins*, 107 F.4th at 621–22; *Rutledge*, 648 F.3d
at 559; *McMath*, 559 F.3d at 666. This is in part because if the
district judge fails to state his findings for the record, there is
a "void that stymies appellate review, gives us no finding of
fact to which we might defer, and ultimately precludes us
from affirming the denial of the *Batson* challenge." *Morgan*,
822 F.3d at 331.

A few examples are worth exploring. We begin with
*United States v. Taylor*, 509 F.3d 839 (7th Cir. 2007). In *Taylor*,
the defense made three *Batson* challenges to the prosecution's
strikes. *Id*. at 843. While the district court found that two of
the strikes were not racially motivated after assessing the
prosecutor's credibility, he "overlooked this last step with re-
spect to one potential juror." *Id*. As to that third juror, we were
"unable to come to any conclusion … because the district
court did not make a record of its credibility determination at
the third stage of the *Batson* inquiry." *Id*. at 851. Accordingly,
we remanded the case to the district court "to supplement the
record with its reasons for denying the *Batson* challenge" with
respect to a single potential juror. *Id*.

So, too, in *McMath*. There, the district judge summarily de-
nied the defense's *Batson* challenge. *Id*. at 663. The prosecutors
argued that this flat denial should be treated as "'implicit
findings' on whether the prosecutor's race-neutral reason was
credible." *Id*. at 664. We rejected this argument. Applying the
Supreme Court's decision in *Snyder v. Louisiana*, 552 U.S. 472
(2008), we held that because the district judge "made no find-
ings regarding the prosecutor's race-neutral demeanor-based

justification of the strike … we cannot presume that the pros-ecutor's race-neutral justification was credible simply because the district judge ultimately denied the challenge." *Id*. at 666. The district judge's failure to make such findings "leaves a void in the record that does not allow us to affirm the denial." *Id*.

While both *Taylor* and *McMath* involved silence by the dis-trict court at step three, we have also remanded in cases where the district judge made insufficient findings, or, as here, merely repeated the striking party's facially neutral reason for the strike. Take, for example, *United States v. Rutledge*, 648 F.3d 555 (7th Cir. 2011). In *Rutledge*, the district judge denied a *Bat-son* challenge in the following way: "Those [reasons offered by the prosecution for the strike] are both nonracial-related reasons. So I'm going to excuse [the stricken juror]." *Id*. at 558. In remanding for further findings, we found it "disturbing[]" that during the *Batson* discussion, "the district court never once credited the demeanor-based reason for the prosecutor's peremptory strike." *Id*. at 560. Rather, the court "merely re-peated that the demeanor-based justification was a 'non-racial reason.'" *Id*.

More recently, we addressed a similar situation in *United States v. Watkins*, 107 F.4th 607 (7th Cir. 2024). In *Watkins*, the district judge heard the prosecution's race-neutral reasons (that is, conducted step two), and stated for the record that he "will find those are race-neutral reasons." *Watkins*, 107 F.4th at 621. He said nothing more, and like in *Rutledge*, we re-manded for additional findings. *Id*.

In this case, we must analyze whether the district judge properly conducted the *Batson* inquiry. The plaintiffs dispute

the credibility of the defendants' proffered reason for striking Juror 10, so we focus solely on *Batson*'s third step.

Based upon the record before us, it is difficult to discern whether the district judge properly completed *Batson*'s third step. In one exchange at oral argument, defense counsel told us that he did not believe that the district judge had conducted the third step of the analysis on the record. Ultimately, we agree that the district judge halted his *Batson* analysis too early, completing the required step two finding but failing to continue forward to step three.

After the jury was discharged, plaintiffs' counsel stated for the record that she believed Juror 10—a social worker—had been struck because she was the final Black member of the venire panel. Defense counsel had lodged a preemptory strike based upon Juror 10's employment as a counselor who worked for Milwaukee County, indicating that the defendants believed Juror 10 would be unusually sympathetic to one of the plaintiffs' expert witnesses, a counselor, who testified to the emotional damage that Carter suffered because of the stop.

To complete the *Batson* inquiry, the judge needed to decide whether the defense's proffered reason for the strike was pretextual. *Rutledge*, 648 F.3d at 558–59. But he didn't do so. Instead, he said:

> And given that one of the plaintiffs' witnesses was a counselor, I think also is a contributing factor for both sides whether you want the individual or don't, and so I find for the reasons that the court stated off the record yesterday, that

the defense has provided a race-neutral reason
for having exercised their peremptory strike.

We have previously stated that simply classifying the striking party's "justification" as "race-neutral … is not enough" to constitute a step three *Batson* finding. *Rutledge*, 648 F.3d at 560; *see also Lisle*, 933 F.3d at 715. *Batson*'s third step "*requires* the court to weigh the evidence and determine whether the [striking party's] nondiscriminatory reason for the strike is credible." *Rutledge*, 648 F.3d at 559 (emphasis in original). And "*Batson* cannot operate properly if the second and third steps are conflated." *Id*. This is why we have encouraged district courts to take *Batson*'s steps in order such that we can easily discern a step-two finding from a step-three one. *Lovies*, 16 F.4th at 503. Here, a remand for the step-three analysis is necessary.

We have considered whether we can take the district judge's initial comments, including those about Juror 10's background as a counselor, as the findings necessary to underpin a third-step analysis. This reading is difficult for us to square, since the district judge concluded with saying "and so I find"—for the reasons stated off the record—"the defense has provided a race neutral reason."

The district judge signaled to the parties that he was providing reasons to support the finding of a race-neutral reason and then stopped short. And the most natural reading of the second half of the district judge's comment classifying the defense's reason as "race-neutral" suggests that the judge was not making any credibility determinations. The district judge did not indicate whether he believed the defense, whether he found them credible, or whether, in his discretion, he thought the counselor could be unusually sympathetic to one of the

plaintiffs' witnesses. *See Lisle*, 933 F.3d at 715. Instead, he par-roted defense counsel's proffered reason and correctly found it to be race-neutral. But determining whether the defense provided a race-neutral reason is not the point of step three of the *Batson* analysis. Rather, it is the point of step two.

This issue is made more difficult because the judge heard the initial objection at an untranscribed sidebar, which is inconsistent with our request that district judges develop "a crystal-clear record … for the benefit of all, including to facilitate appellate review." *Lovies*, 16 F.4th at 503–04. After the sidebar, the district judge allowed the parties to make a post-hoc record of the objection. Despite the parties' request that the district judge make a record of the *Batson* challenge, on appeal we have only the brief colloquy above. Either there was more to the district judge's analysis that he decided not to put on the record, or the step-three analysis was never completed. Either way, the record before us does not allow us to affirm the judge's denial of the *Batson* challenge and we must remand for additional findings, as required by our precedent.

The colloquies in *Rutledge* and *Watkins*, discussed above, bear striking similarity to the one here. In this case, like in *Rutledge* and *Watkins*, the district judge merely repeated the rationale offered by the defense. Further, as in *Rutledge* and *Watkins*, counsel did not request that the judge put any additional step-three analysis on the record. 648 F.3d at 560. We therefore see no reason to depart from our well-settled practice of remanding for further findings by the district judge. *See Watkins*, 107 F.4th at 621. That this case is a civil one does not change our analysis. *See Lisle*, 933 F.3d at 715 (remanding for further findings in a civil case when "the judge never took the

final step of making a finding on the spot about the credibility" of the striking party's reasons).

Accordingly, we remand the case for the district judge to properly complete the three-step process under *Batson*. As in *Watkins*, we express no opinion as to the outcome of the credibility issues or factual findings, which are "matter[s] for the district court to consider in the first instance." *Watkins*, 107 F.4th at 621. Depending on the outcome of a properly conducted *Batson* process, placed upon the record to allow for appellate review, the judge may order a new trial, reopen the period for dispositive motions, or manage this case as he otherwise sees appropriate.

It would have been best if all of the district judge's relevant comments appeared in the record. *See Lovies*, 16 F.4th at 503. In this case, both parties asked the district court to make a record, and the district judge addressed the *Batson* issue in the limited manner discussed above. When reviewing *Batson* claims where there is a gap in the record that does not allow us to determine that the proper steps were followed, or where the necessary findings were not made, we remand for further findings. *Morgan*, 822 F.3d at 331. And that makes sense because *Batson* is not merely about the parties' rights. Rather, *Batson* also implicates the potential juror's Equal Protection rights.

The district judge was understandably frustrated by the parties' litigation conduct. But district judges have a unique responsibility in properly administering *Batson* in part because potential jurors are not represented by counsel who can ensure that their Equal Protection rights are not violated. That job "rests first and foremost with trial judges." *Flowers v. Mississippi*, 588 U.S. 284, 303 (2019). "Other than voting, serving

on a jury is the most substantial opportunity that most citizens have to participate in the democratic process." *Id.* at 293. Creating a "comprehensive record as to each step" of a *Batson* inquiry for appeal helps courts fulfill the Supreme Court's mandate that we do not allow *Batson* to "backslide[]." *Lovies*, 16 F.4th at 503; *Flowers*, 588 U.S. at 301.

We also briefly address the plaintiffs' contention that the district court erred in excusing Juror 14. The court excused Juror 14, a Black woman, for cause after she told the court that she would need to find alternative care for her elderly brother, and plaintiffs' counsel objected. To the extent that the plaintiffs appeal their challenge to the excusal of Juror 14 under *Batson*, that argument was not raised below, and we therefore decline to address it. Nothing in the district court record shows that the plaintiffs raised a *Batson* challenge to Juror 14. *See Batson*, 476 U.S. at 93–94 (requiring a "prima facie case of purposeful discrimination").

A few final points in closing. *Batson* applies in civil cases. *Flowers*, 588 U.S. at 301 (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991)). And a party of any race may make a *Batson* challenge, including when the party challenging the strike and the stricken juror are of different races. *Id*. So the fact that two of the three plaintiffs in this case are white women does nothing to change the applicability of *Batson*, contrary to the district judge's statements on the record.

## B. Bifurcation

The plaintiffs' remaining arguments regarding the district judge's decisions before and during the trial lack merit. We take each in turn, beginning with the plaintiffs' contention

that the district court improperly *sua sponte* granted summary judgment.

Before the trial began, the district judge decided that the trial would be best administered by answering the question of reasonable suspicion as to Officer Kaine—the officer who initiated the stop—before addressing any other issues. The plaintiffs characterize the district court's decision as an impermissible *sua sponte* grant of summary judgment as to the other claims and the remaining defendants, which they believe should have gone to trial. But in doing so, they misunderstand the nature of the district court's order.

District judges have substantial discretion in administering trials. *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 445 (7th Cir. 1996). And Federal Rule of Civil Procedure 42 explicitly allows district courts to bifurcate claims for trial "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). In this case, the district judge bifurcated the trial such that it would first address the central issue in this case: whether Officer Kaine possessed reasonable suspicion when he stopped the plaintiffs. In reviewing a decision to bifurcate, "[w]e need not decide whether this was the best or even the only good way of trying this case." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1128 (7th Cir. 1999). Our task is much simpler: we review the district judge's decision for abuse of discretion only. *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013).

The plaintiffs asserted that the tip received by Officer Kaine was insufficient to confer reasonable suspicion sufficient to justify the stop. Consequently, the jury's determination on the existence of reasonable suspicion went to the heart of every claim. And if the jury found no underlying

constitutional violation (as it did), the plaintiffs' *Monell* claim could not survive. Trying the question of reasonable suspicion first informed whether further proceedings were required at all. *See, e.g.*, *Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000). As such, the district judge did not abuse his discretion in trying this critical issue first.

## C. Exclusion of Expert Testimony

The plaintiffs next argue that the district court erroneously excluded the testimony of their police-practices expert, Brian Landers, who would have testified as to whether the officers conducted the stop in a manner consistent with their training. We disagree.

We review de novo whether the district judge applied the appropriate legal standard in admitting or excluding expert testimony, and we review for abuse of discretion the ultimate admissibility decision. *Florek v. Village of Mundelein, Ill.*, 649 F.3d 594, 602 (7th Cir. 2011). Because the plaintiffs do not argue that the district judge misapplied the applicable legal standard, our review is for abuse of discretion only. A district judge abuses his discretion when no reasonable person could agree with his decision. *Downing v. Abbott Labs.*, 48 F.4th 793, 809 (7th Cir. 2022).

In this case, the district judge focused the trial on the question of reasonable suspicion. That inquiry required exploration of whether Officer Kaine could "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *United States v. Pace*, 48 F.4th 741, 749 (7th Cir. 2022) (quoting *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020)). To decide whether reasonable suspicion existed, the jury did not need

to determine whether the method of conducting the stop was consistent with best police practices or the City's procedures. Thus, Landers would not have had anything "useful to say about the particular circumstances at issue." *Downing*, 48 F.4th at 810. "[E]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). The district judge did not abuse his discretion in excluding Landers' testimony.

Further, whether Officer Kaine possessed reasonable suspicion sufficient to stop the Lexus was not a particularly complicated inquiry. We are convinced that the jury needed no help from an expert in conducting it. Officer Kaine's suspicion was based on a citizen's tip that a robbery was in progress. Officer Kaine investigated this tip by stopping the Lexus. Whether this tip gave rise to reasonable suspicion is "a matter of everyday experience," where "expert testimony is less likely to be admissible." *Florek*, 649 F.3d at 602–03 (citing *United States v. Hanna*, 293 F.3d 1080, 1085–86 (9th Cir. 2002)). Given the focus of the trial, we cannot conclude that the district judge abused his discretion in excluding Landers from testifying.

**D. Jury Instructions**

The plaintiffs also contend that the district judge erred by failing to instruct the jury on the difference between a *Terry* stop and an arrest and by failing to instruct the jury that open carry of certain firearms in Wisconsin is not a crime. Both contentions lack merit.

Our review of the district judge's jury instructions is deferential. We analyze the instructions "as a whole to determine

if they accurately state the law and do not confuse the jury." *Doornbos v. City of Chicago*, 868 F.3d 572, 580 (7th Cir. 2017). A district judge is not obligated to "describe all valid legal principles" in his instructions. *EEOC v. AutoZone, Inc.*, 809 F.3d 916, 923 (7th Cir. 2016). We will reverse "only if the instructions in their entirety so thoroughly misled the jury that they caused prejudice." *Downing*, 48 F.4th at 810 (citation omitted).

The plaintiffs argue that the district judge should have instructed the jury on the difference between a *Terry* stop and an arrest. They are mistaken.

On February 1, 2023, the parties submitted their proposed jury instructions, and the plaintiffs included Seventh Circuit Pattern Civil Jury Instruction 7.06, which deals with *Terry* stops, along with the additional language provided in Comment C to Instruction 7.06. Comment C provides:

> In most situations, the court will decide whether the seizure was sufficiently short or unintrusive to constitute a *Terry* stop. If the court finds the seizure went beyond a *Terry* stop, the court should give Instruction 7.07, for false arrest. If there is a factual dispute as to whether an investigatory stop or an arrest took place, the court may need to give both sets of instructions and advise the jury to apply one or the other based on its resolution of the disputed facts.

*See* Committee on Federal Civil Jury Instructions of the Seventh Cir., Pattern Civil Jury Instr. 7.06 cmt. C. As discussed below, the district judge did not ultimately instruct the jury using the language in Comment C.

At 9:00 p.m. on March 12, 2023, the day before trial, the plaintiffs submitted a proposed supplemental jury instruction that outlined various factors the jury could consider in determining whether the plaintiffs were arrested. They also submitted an objection to the court's proposed instructions—which were provided to the parties at the February 8 final pretrial conference—to the extent that they did not instruct the jury on the difference between a *Terry* stop and an arrest. The next day, the district judge admonished plaintiffs' counsel, stating:

> Again, with all due respect Ms. Bertrand, if you or any lawyer looked at the docket sheet in this case, you talk about obfuscations and stream of consciousness and lack of professionalism in response to this Court's order, and I specifically am referencing the matter of the summary judgment debacle and now just last night at 9:00 filing changes in jury instructions. Those are not going to go anywhere because you did not meet and confer, and you had every day since February 8th to do just that, and you chose a different path, and there are consequences seriously. Serious consequences I might add.

First, we do not believe the district court erred in refusing to consider the late-filed supplemental instruction. District courts have "considerable discretion in interpreting and applying their local rules" and we review the decision to enforce a rule "for an abuse of discretion." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 549 (7th Cir. 2017). As the district judge noted, plaintiffs' counsel had nearly a month to meet and confer with opposing counsel regarding the supplemental

instruction. She did not do so. Consequently, the judge decided that he would not consider the supplemental instruction. We cannot conclude that the district judge abused his discretion in this situation.

Second, we also disagree that the district judge was obligated to instruct the jury on the difference between a *Terry* stop and an arrest. For a *Terry* stop, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011). In this case, though, the district judge made clear that the only issue before the jury was reasonable suspicion. In these circumstances, we cannot agree that the district judge abused his discretion in failing to give an instruction on the difference between a *Terry* stop and an arrest. Additionally, the instruction that the district judge did give on *Terry* stops was this Circuit's pattern instruction, which is "presumed to accurately state the law," *United States v. Freed*, 921 F.3d 716, 721 (7th Cir. 2019), and the plaintiffs do not argue that the instruction given misstated the law or misled the jury. We thus see no reason to fault the district judge's decision.

Finally, the plaintiffs contend that the district judge should have instructed the jury on the finer points of Wisconsin firearms law. Yet again, we reject the plaintiffs' contention.

At trial, the plaintiffs sought to argue that Officer Kaine could not have possessed reasonable suspicion based on the allegation of Carter having a gun because possessing certain firearms in vehicles is not illegal in Wisconsin. During the charge conference, the parties stipulated that the possession of certain types of firearms in vehicles is not a crime in Wisconsin. The district judge told the parties that he did not

believe an instruction on Wisconsin's firearms law was necessary, but that the plaintiffs could argue that point to the jury during their closing arguments. Just as above, we cannot conclude that the failure to give this instruction was reversible error. The district judge permitted the plaintiffs to argue that possession of a firearm in a car was not necessarily criminal during closing argument. We consider the instructions, "along with all of the evidence and arguments," to determine whether the jury was misled. *AutoZone*, 809 F.3d at 923; *see also United States v. Choiniere*, 517 F.3d 967, 972 (7th Cir. 2008) (no error when the jury instructions accurately stated the law and defense was permitted to argue tangential points in closing). We see no need for reversal here.

**E.  Recusal**

Next, the plaintiffs urge us to reverse the district judge's decision not to recuse himself from the proceedings. We decline this invitation. During the trial, the district judge repeatedly admonished plaintiffs' counsel for the way she litigated the case and expressed serious doubt as to the case's merits. Before trial began, and after one such admonishment for poor litigation conduct, plaintiffs' counsel requested that the district judge recuse himself. He denied the motion for recusal. According to the plaintiffs, the district judge could not have possibly been a fair arbiter given his comments. We disagree.

A district judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings … do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."

*Liteky v. United States*, 510 U.S. 540, 555 (1994). This means that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id*.

Here, we have little trouble stating that the district judge was not required to recuse himself. There is no doubt that he appeared frustrated with the way the parties conducted the litigation. But expressions of "impatience, dissatisfaction, annoyance, and even anger" are not necessarily indicative of a district judge's inability to exercise fair judgment. *Id.* at 555–56. And the district judge continued to exercise fair judgment after expressing his dissatisfaction with plaintiffs' counsel and his serious reservations about the merits of her case. Indeed, he ruled in favor of the plaintiffs at various points, including by denying the defendants' motion for judgment as a matter of law and denying the defendants' request that a punitive-damages instruction not be given.

## F.  Cumulative Error

In closing, the plaintiffs ask us to send this matter back for a new trial because all the above errors so affected the proceedings as to render them insufficient. Again, we disagree. Civil litigants are entitled "to a fair trial, not a perfect one." *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993). Cumulative error applies in circumstances when "multiple errors occurred at trial, and [] those errors, in the context of the entire trial, were so severe as to have rendered [the] trial fundamentally unfair." *United States v. Powell*, 652 F.3d 702, 706 (7th Cir. 2011). We reject the plaintiffs' cumulative error argument because—other than the necessary remand on *Batson*—we divine no other errors on the part of the district judge.

### III.    Conclusion

For the reasons stated above, we AFFIRM IN PART and REMAND IN PART for further findings on the *Batson* challenge to Juror 10.

KIRSCH, *Circuit Judge,* concurring in part and dissenting in part. I join the majority's opinion, except as to its conclusion that we are required to remand for additional factual findings on the plaintiffs' *Batson* challenge regarding Juror 10. The majority takes issue with step three of the *Batson* inquiry, which requires the district court to determine whether the party opposing the strike has proved that the proffered reason for the strike was pretext for purposeful discrimination. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). The court can satisfy this requirement "in many ways," although "merely repeat[ing] that the … justification was a 'nonracial-related reason'" is insufficient. *United States v. Rutledge*, 648 F.3d 555, 558, 560 (7th Cir. 2011). But that's not what the district judge did here. Rather, the judge stated that Juror 10's occupation as a counselor was both race-neutral and the reason for the strike ("given that one of the plaintiffs' witnesses was a counselor, I think also is a contributing factor for both sides whether you want the individual or don't"), satisfying both the second and third *Batson* steps. The court's determination that Juror 10's occupation was the reason for the strike was a factual finding that Juror 10 was not struck based on her race. In other words, the judge did not merely repeat the non-racial reason but credited it for the strike. That finding was not clearly erroneous. The majority is sending this case back for the district judge to tell us what he already has: that the defense struck Juror 10 because of her occupation, not her race. Remand is unnecessary, and so I respectfully dissent from that decision.